And we'll take up our next case, which is Kopchik v. East Fishkill. Good morning. Good morning, Your Honors. May it please the Court, I am Jane Gould. My office represents the plaintiff, Steve Kopchik III, in this case and on this appeal. Briefly, the plaintiff, Steve Kopchik III, is now 60 years old. He was employed by the Town of East Fishkill for 40 years. During the last 34 years of his employment until the resolution, which gives rise to this case, he served in the protected civil service position of building and grounds supervisor. He is appealing the district court's dismissal on a 12B6 motion of his complaint, alleging that he was constructively discharged in retaliation for having made a complaint of age discrimination and because of discrimination on the basis of disability. The focal point of the district court's decision here was that the plaintiff, the complaint, failed to plausibly plead a causal connection between the adverse employment action, this resolution essentially abolishing his job and his filing of an EEOC complaint of age discrimination, and that it failed to plead a causal connection between that adverse employment action and his disability. The thrust of our appeal, I think, the court has gained from our brief. While the district court gave what I perceive to be minimal lip service to the letter of the law and the standard that's supposed to be applied to a pleading on a 12B6 motion, which is the so-called plausible pleading standard . . . Can I just ask you about the timeline a little bit? Yes. So, as I understand it, he files his age claim in the fall of 2014. Let me just go through it and then respond to it, okay? And then it seems as if in April 2015 the town becomes aware of it while it's before the EEOC. He gets a right to sue letter, and the right to sue letter expires November 30, 2015. That's, in all relevant respects, correct. Just as a note, I think that we, in response to the motion, it turned out that the complaint was actually filed in January of 2015, but it is correct that it's the contention and the only documentary evidence we have is that the town became aware of it in April of 2015, issued a notice of right to sue in August of 2015, and right to sue expired November 30, 2015. And then the resolution was adopted by the town January 28, 2016. Correct. So that's like two months later. Correct. Did the town know, though, that the right to sue letter period expired in November so that . . . I mean, the argument is they waited until that ended and then they quickly moved on him to get rid of him as a supervisor in his department. So how do we know that the town knew about the right to sue letter expiration? It's your lying in wait argument. Yes, I know it's my lying in wait argument. I don't believe that that notice is in the record, but I believe that generally when the EEOC sends a notice of right to sue to a complainant, there's a copy sent to the respondent. It's not in the record. But was it disputed below whether the town knew that he could no longer sue on the age claim at the time they passed the resolution, I guess is my question. Well, given that there is no answer in this process, we were only on motion to dismiss, what was argued was that there's no evidence in the record that the town knew. There was never a denial one way or the other. There couldn't be because we weren't at that point in the case. The other side is arguing, as far as the lying in wait argument, is that there was a state remedy that was available to her, to him. There is a state remedy, but as a practical matter, and I think the district court is obligated to take into account its experience as a practical matter, when a federal claim has gone by the wayside because of time, it is very unlikely that a plaintiff will, A, find the lawyer to go to state court where, frankly, and I've been doing this for a few years, where, frankly, there is no provision for attorney's fees, and that is a hammer in these cases. So, yes, there is a state law claim available, but the likelihood of that happening? Excuse me? Well, that's their argument. It's unclear to me in this circuit whether that actually is true. That is their argument. In any event, we believe that the court, while it spoke to the plausibility pleading standard, really didn't adhere to the spirit of the standard to be applied in this circuit to a complaint. Number one, a plausibility standard is not a probability standard. Number two, I believe that the court ignored the fact that a discrimination complaint is subject to a lesser standard of review. Number three, a discrimination complaint in this circuit need not even allege a prima facie case, although we believe that we have alleged a prima facie case. And to us, most important is that in order to prove and certainly to plead a claim of discrimination, the plaintiff is entitled to identify bits and pieces of evidence, in this case allegations, that together form a mosaic from which an inference of discrimination can be drawn. And it's our position that here, rather than looking at this complaint as a whole and assembling those bits and pieces, and looking at the mosaic which we think we've pled, the court decided to look at them individually, in a vacuum, and systematically discard each. And first, I want to just talk a little bit about the job action that we're talking about here. And that is the January 28th, 2016 resolution, which abolished all the jobs in plaintiff's department, directed rehire of all other people in his department by the highway superintendent, all laborers and all MEOs, motor equipment operators. And those rehires were to be with no change in salary, and as the resolution says, with no diminishment. Solely as to our client, as to Mr. Kopchick, the highway superintendent was authorized to recommend, not authorized to hire, to recommend rehiring of our client, not as a supervisor, but as a motor equipment operator, which is a demotion, and that's not challenged. Why did they have the different dates in the resolution? Well, I'm just going to delete it. My next sentence goes exactly to that. The different dates were that the people who were going to be rehired were supposed to be rehired as of, I think it was January 12th of 2016, and go to the highway department. Sorry, February 12th. And then our client was supposed to be in recommendation by February 26th of 2016. And can I tell you why from the face of the resolution? No, but I can tell you why from the allegations of the complaint, which is that they were going to negotiate with our client and the union to get him to accept some job as yet undefined, and probably the MEO job, and that's what was going to happen between January 28th and February 26th. But there was something about he had to do it by the 27th or else he'd give up. He'd have to retire by the 27th or give up his health insurance or something? Yes. Well, what happened is, and the allegations here are in the complaint, that we say the town purported to negotiate with him and the union to get him to accept some job, and we say an undefined job. Then he was told that if he did not accept an undefined job, unspecified as to salary, civil service status, or whether the date of hire would, his original date of hire would carry into the new job, if he didn't accept that by February 26th, 2016, he would be laid off or terminated. And those are the allegations in the complaint, and that's what happened. He concerned for the retirement issue, and we cite to the collective bargaining agreement, which talks to certain rights that people who were hired prior to January 1, 2007, had, as opposed to rights that people who were hired after January 2, 2007 had, where they would have to contribute to their retirement health insurance. Our client, who had been injured, who had had a traumatic brain injury, who had all sorts of problems, felt that he couldn't risk not having that lifetime free retirement benefit, and that is what caused him to retire. There was never a particular job offered to him. There was never a job offered to him that told him what his civil service status was, what his salary would be. And as we also allege in the complaint, the only job that was actually authorized, in other words, the only recommendation that the highway superintendent could make, an MEO job was a job for which our client did not have a license, and the town knew that, a job for which he might never have gotten a license because he did have problems of concentration, learning, and neurological function. And they nevertheless, from our point of view, this is a malicious situation. They nevertheless only authorized that particular job, and he felt he had no choice but to retire. I just want to ‑‑ You've saved a minute for rebuttal. Do you want to use it now, or would you rather come back and talk to us? I'm going to reserve. Okay. Why don't we hear from Mr. Pascal. Is that how I say your name? Yes, thank you, Your Honor. Good morning. May it please the Court. My name is Nicholas Pascal, and representing the FLE, Town of East Fishkill, in this matter. We are before the panel on the town's motion to dismiss the complaint pursuant to Rule 12b-6, which the district court granted. There were two causes of action, federal causes of action and companion state causes of action asserted in the complaint. The district court dismissed each of them. The first pair of causes of action, if you will, were in the nature of retaliation for a prior filing of an age discrimination complaint before the EEOC. Our position is that the complaint, as pled, even giving all favorable inferences to the plaintiff, doesn't give rise to even a minimal inference, not less a plausible inference, that what was done in January of 2016 was somehow in retaliation. Why not? It seems to me highly plausible. I don't understand. Why do you think it's not even minimally plausible? Yes, thank you, Your Honor. The reason that we argue that it's implausible is because the courts have typically looked at several aspects or elements to establish this type of retaliation claim. The plaintiff has conceded below and on appeal that there's no direct evidence of retaliatory intent. So that issue is not in play here. So we then look at temporal proximity. Well, we have between nine months and a year depending on the measure. Temporal proximity, if you were talking about just you're fired, something like that, then the wait for a year before somebody says you're fired very strongly argues against the inference. But here what was done was an elaborate restructuring, the termination of one department, a very elaborate thing that required consulting with lawyers and all kinds of things. It doesn't seem to me that a year is at all long to, just as a matter of logical inference, to draw the inference that it was motivated by retaliation for the complaint when what they were doing was something that would have taken that long, quite a bit of time, to think through and effectuate. Potentially, Your Honor, but respectfully, the resolution that was enacted was one page. We had a relatively modest size. It was a one-page resolution, but it involves an elaborate thing. It's a termination of a department and what to do with the employees and how to work it all out. And the other workers were getting offered new jobs, guaranteed new jobs at the same pay, but he's being treated differently. It may have been on one page, but it's an elaborate thing to think through and to structure and to do. Even if it were, Your Honor, I think there's no allegation in the complaint or the record below that would indicate that the town board took the action they did in January in retaliation for what had occurred a year before. Nothing occurs in that intervening period that's alleged in the complaint. Mr. Kopchick, the plaintiff appellant, was injured in the fall of 2014. He returned to his supervisory position. The complaint alleges without any limitation. And there's no allegation that anything occurred in the interim period until January 26th of 2016. Isn't it a fair inference that the one page that you talk about was not just written in the morning and then all of a sudden, like Athena sprung out of the head of Zeus, it's there, it just hears this one page? Certainly, Your Honor. It may have been under consideration and may have been under consideration for more than a month. It may have been under consideration for two months or six months or even a year. But the reality is that not – So why isn't it a plausible – it doesn't have to be plausible. It's not a very high standard. Not by virtue of reference to the passage of time itself. I would say that the authorities in this circuit have held that as little as two months renders the connection by virtue of time alone to be implausible. So there has to be something else other than just the passage of time. It depends for what you're talking about. If it's just for a thing like, okay, you're fired, yes, three months, five months, six months later, very much diminishes the likelihood that this would be a retaliatory thing. But when it's something as complex as this is, it's a fair inference that there was a good deal of planning that went into this restructuring. Your Honor, I'm not sure I would agree with the characterization of the restructuring as complex. It was a fairly small department. The subordinates were classified as MEOs, mechanical equipment operators. They had equivalent positions in the highway department. So the transfer from buildings and grounds to highway was relatively seamless. The issue, and this question was raised on the appellee's argument, is why was the supervisor given an additional 30 days? The reality is there was no equivalent position in that department. So there was going to be an additional 30 days allowed to work this out, come up with an appropriate civil service position. But we won't know that that could have occurred or will ever occur because the plaintiff appellant retired the day before this is to become effective as to him. But his job would have changed dramatically, right? He was a supervisor of the previous department. We don't. He would be a motor vehicle operator like the other three workers. Possibly, Your Honor, but we don't know that because the plaintiff appellant- But it says in the resolution. It says the supervisor of the new department can consider him as a motor equipment operator. I think that's- That would be a demotion, right? Your Honor, I think it would not be an equivalent position. I think that's what's pled in the complaint. Our position is that we'll never know what the ultimate position would be. That's what was authorized up front, certainly. But by the plaintiff electing to retire the day before the resolution became effective and not, in effect, allowing the negotiations to conclude, we just won't know what position he ultimately could have obtained. And as far as the lying in wait argument, if I can just circle back to the temporal proximity argument, our position is that in the Supreme Court case, Clark v. Breeden, I think, is very clear on when this time clock begins to run or what activity can constitute protected activity. And the issuance by the EEOC of a right to sue letter or the passive expiry of that letter is not an action by the plaintiff appellant. The only action he took was in January when he filed the complaint. So our position is that you don't count the time running in November. Now, I understand the plaintiff's argument as well. You waited until January because that was an opportune time for you to act. But the district court recognized as well there was a passage of two additional months between the end of November and the end of January that the plaintiff appellant doesn't account for. If we were really just lying in wait, we would have submitted the resolution the following month in December. And we gave him an additional 30 days and stuck it out until February to continue the work out process. So in any event, we don't feel that there was a real opportune time to act here in January. In addition, because the plaintiff does have recourse to state court action, and we think recourse to action under Section 1983. So even if the town were advised, and that is an assumption, Your Honor raised that on questioning. Does the town know? Did the town not know? It's not in the record. But let's assume for the sake of argument the town did know and was advised by counsel. Surely counsel would have advised the town, look, you have no advantage to acting now. You can still be sued. So really the timing of it, I think, being tied to the expiry of the letter is not a plausible allegation in that respect. I want to ask you about a different matter, which is the right to replead. Would the plaintiff want to replead if the plaintiff had the right? I'm asking counsel for the plaintiff. Would the plaintiff want to replead, or is this a mood issue? Do you have a desire to replead? Just as a note, and I think. Yes or no? I don't think I need to replead. I really don't. I'm not asking you whether you need to. You do if you're going to lose. Of course, and therefore. I'm just asking you, would you like to replead if you lose? Yes. Okay. Now, my question is. Pretty easy. My question is, she was denied the right to replead. Your Honor, actually, I think what the record will reflect is that Judge Bracetti's practices are to automatically afford the plaintiff the right to replead. And the plaintiff, the record will reflect a decline to replead. So the motion was. After when the court indicated the judgment? No, Your Honor. The timeline was that the motion.  The motion was made. When the motion was pending. Correct, Your Honor. Now, we have an opinion a couple of years ago, written by Judge Calabresi. I was on the panel, which explicitly addressed exactly the same thing as the judge did here, and said that it was illegal, it was inappropriate. What was done here, if I understand it correctly, was that when the motion to dismiss under 12b-6 was pending, the district judge said to the plaintiff, would you like to replead? And the plaintiff said, no, at that point. That's correct. And then the judge later dismissed the complaint on that motion under 12b-6, and essentially took the position, you've had your right to replead. You turned it down. Now, this is exactly what was done in the Lorelei finance case. It's at 797 F. 3rd, 160. And we explained that this was completely improper. A plaintiff has no obligation to be put to the question of whether to replead when the plaintiff doesn't know whether the court is going to grant the motion under 12b-6. And if so, why? The plaintiff's position is, this complaint, we think it's sufficient. So why should we replead when we filed a sufficient complaint, just because the defendant has made a motion saying it's not sufficient? We want to know what the court says. And exactly the same thing was followed by the district judge in that case, which we ruled was improper. So I would think in this circumstance that if our court rules against, sustains the judgment, the plaintiff should be entitled to replead, which is exactly what we ruled in Lorelei. Do you have something to say about that? Well, Your Honor, I would suggest that might involve an abrogation of the lower court's practices. They are specifically set forth in that manner. Yes, but we ruled expressly that that was inappropriate and unfair to a plaintiff to require the plaintiff to guess whether my complaint is actually insufficient as it is. And if so, why? And just express guesswork as to what needs to be done. If I may briefly, Your Honor. If the judge rules and says the complaint is insufficient because it fails to allege this or that sufficiently, then the plaintiff knows what needs to be bolstered in an amended complaint. Yes. The plaintiff just left to guess. Well, thank you, Your Honor. If I may very briefly because I see my time is running over. Go ahead. I would suggest that in the circumstances here, the plaintiff was not left to guess. The court didn't sua sponte on its own motion dismiss the complaint. The plaintiff had the benefit of our motion and our briefing. The plaintiff doesn't know what the court's going to rule. Granted, however, we've raised objections or deficiencies. The one we were talking about, the one we ruled on, was exactly like this. The defendant had made a motion to dismiss the complaint, and the court said to the plaintiff, okay, there's this motion pending. Do you want to replead? Right. So I guess my only suggestion would be in this particular case, the plaintiff could have accepted the invitation, replead based upon the objections we asserted, and then we may or may not have filed a motion as to the amended complaint. But I'm not going to disagree with the holding of the Lorelei case. I'm not familiar with it intimately. I do agree with the court's characterization of the timeline as to what occurred here. A motion was made. The plaintiff was permitted leave without a motion of his own. To amend, plaintiff declined. And at this point, plaintiff has not made any motion for leave to replead or argued that they should be given such leave on their brief. Thank you. We'll hear a minute from Ms. Gould. Your Honor, I think the court has gotten my points, and I have nothing further to say at this time. Okay, thank you both, and we'll reserve decision.